## A. HALTHAUS
### v.
### J. M. KUNTZ.

ILLEGAL CONSIDERATION.—Where the consideration for defendant's promise to plaintiff was the agreement of plaintiff that he would not prosecute defendant's son on a criminal charge which had been preferred against him. *Held,* that such contract is illegal and can not be enforced.

APPEAL from the Circuit Court of Perry county; the Hon. GEORGE W. WALL, Judge, presiding.   Opinion filed December 14, 1885.

Mr. T. T. FOUNTAIN, for appellant.

Mr. JOHN BOYD, for appellee.

WILKIN, J.   This suit was begun before a justice of the peace, and judgment was rendered for plaintiff for $88.99 and costs.   On appeal to the Circuit Court of Perry county, and trial had before a jury, the judgment was for defendant for costs.   On the trial in the circuit court the plaintiff offered in evidence this statement:

"ST. LOUIS, April 27, 1883.
"I hereby acknowledge that I have wronged Mr. A. Halt-

haus in making collections for Alkin Wiley, Condon, Mo. on the Feb. 12th, '83, fifteen dollars; also of Mr. Hoffman & Son of Pinckneyville, Ills., the sum of forty-five 85-100 dollars ; further, the sum of twenty-two dollars of Mr. Wilt-house, De Soto, Illinois, which all I have collected and marked paid in the books, but did not pay the money to Mr. Halthaus. But now, after reconsidering my wrong, am willing to have my father, J. M. Kuntz, from Pinckneyville, or myself, to set-tle the above just claim of A. Halthaus at a time of ten days from above date for certain total amount, $82.85.

" H. R. KUNTZ."

Also the following letter from defendant to plaintiff writ-ten in German and translated on the trial:

"PINCKNEYVILLE, ILL., April 25th, '83.

" DEAR FRIEND HALTHAUS :

" I have just received the news of the tricks of my son Henry committed, and it worries me a great deal of trouble. I never suspected that I should have raised my son to be guilty of such as I just heard (or received the news of). Be not too hard with him for my sake, and leave open some way for him to better himself. I will once more stand good for this money, but it shall be the last time, and if he continues this way, I would rather see him in the penitentiary, if it should hurt me. Conceal it as well as you can so he will not be branded by every one and could not obtain any more work. For the money that he took please give him some time, and try to make it of him—something every month. Should he be not willing to do so, help him along as well as you can, for my sake if not for him, so he can obtain a situation again, for he does not need to come to my house again. Hoping that you will grant my favor I remain,

" Your friend,

" J. M. KUNTZ."

Plaintiff testified that H. R. Kuntz was in his employ from 1880 up to April, 1883; that while he was out on his trips for him he collected certain moneys from parties indebted to plaintiff and kept the money, failing to report the collections, and not paying over the money. After testifying that the

statement signed by H. R. Kuntz was voluntarily made and
that he had had him arrested for keeping the money, he says:
" When I had Kuntz arrested, Mr. Heckel, who was a friend of
him and his father, started for Pinckneyville, where his father
lived, to see what he could do to befriend the Kuntzes.    I did
not ask him to go.    The next morning I received a telegram
from Heckel, saying in substance: "Release Kuntz—it is all
right."    Understanding that this telegram meant that Heckel
had arranged with J. M. Kuntz to pay or secure the amount
due me, I declined to prosecute and Kuntz was released.    I
arrived at this understanding from a conversation I had with
Heckel before he started to Pinckneyville, he being a friend of
all of the parties; he went to prevent Kuntz's crime from becom-
ing public."

And on cross-examination he says: *In consideration of
J. M. Kuntz becoming security for the amount his son had
stolen from me I agreed to and did not prosecute his son.*

George P. Heckel testified :    Know all parties :    H. R.
Kuntz was in the employ of plaintiff ; he obtained the situa-
tion through my influence.    My first information of Henry's
being in debt to plaintiff was obtained from plaintiff, who
told me Henry was short in his collections and had lied to him
in saying he had not collected certain bills which he had col-
lected and that he had him arrested so as to investigate the
matter further.    I went to the police station where Harry
was and he acknowledged to me that plaintiff had correctly
stated the case to me.    In the conversation with Harry in the
police station, he told me he was confident if I would see his
father, J. M. Kuntz, he would not see him prosecuted, but
would help him out of the scrape.    I told him I was going to
Pinckneyville that night on one of my trips, and would stop
and see his father, and that I thought I could induce plaintiff
not to prosecute him until he heard from me, and I left
Harry with that understanding.    I then saw the plaintiff and
told him I was going to Pinckneyville and would see Harry's
father, and I thought I could get him to fix the matter up,
and that I would telegraph him, and for him not to do any-
thing further toward prosecuting him until he heard from

me. Went to Pinckneyville that night, and saw defendant next morning and explained the whole matter to him, stating the amount involved was something between $80 and $100. Defendant said he would not see his son prosecuted, and if plaintiff would give Harry time to pay the amount, he would see that it should be all right. I then said to defendant I must know from him if he would agree to stand security for the amount if Harry did not pay it, and told him I was going to telegraph the result of my interview with him. He said he did not want the family disgraced on account of the other children, and that if the plaintiff would agree to give Harry time in which to pay the debt that he would be security or responsible for the amount. He also told me to make some settlement with Harry so he would not know that he had become his security. He also told me that he would write a letter to the plaintiff regarding the matter ; that I should make any arrangement that I might think best, to secure the payment of the money by Harry and prevent the disgrace of the family. *I then left him and telegraphed to plaintiff to release Harry, that it was all right.* And on cross-examination this witness also says: *In consideration of defendant going his son's security the plaintiff declined to prosecute his son.*

Defendant testified that he signed the letter offered in evidence, and then says, " the way I came to sign it, Heckel came to me and told me my son was arrested for failing to pay over money to plaintiff, *and unless I helped him out he would be prosecuted."* Told him I would pay the amount, but for plaintiff to try to make it out of Harry.

It would be difficult to find a case in which the evidence more clearly establishes an illegal contract. In fact, both parties frankly admit that the consideration for defendant's promise to plaintiff was the agreement of plaintiff that he would not prosecute his son on the criminal charge which had been preferred against him. · Counsel for appellant says, in his argument in this court, that " the consideration for this promise was doubly good, being first, plaintiff would not prosecute the son of defendant, and second, that he would give the son time to pay."

In the trial below plaintiff asked the court to give this instruction to the jury:

" The court instructs the jury, that if you believe from the evidence in this case that H. R. Kuntz was justly indebted to the plaintiff for money which he had collected of the plaintiffs and failed to pay over, and that said H. R. Kuntz was arrested upon a criminal charge in reference to said transaction, and that the said defendant, J. M. Kuntz, agreed in writing to pay the amount of such indebtedness in *consideration* that the plaintiff would not prosecute the said H. R. Kuntz, and would set him at liberty and extend the time of payment, then, in such case, the defendant is liable for such amount and your verdict should be for plaintiff, unless the defendant has been discharged by act of the plaintiff."

It appears, therefore, that the fact that the promise of appellee was in consideration that the appellant would not prosecute his son is not denied, but is admitted and relied upon to make out plaintiff's case.

Can it be seriously contended that the transaction as shown by the proof and set forth in this instruction was not illegal? It is in the very teeth of section 43 of the Criminal Code and in violation of the common law.

This transaction was not between H. R. Kuntz, who owed the debt, if anything was due plaintiff. It is true that the indebtedness from H. R. Kuntz to the appellant would be a sufficient consideration to support a promise in writing by appellee to appellant to pay the debt, and in the absence of proof to the contrary the presumption would be that such indebtedness was the real consideration for the promise; but here all parties agree that the promise was in consideration that the plaintiff would not prosecute the criminal charge against H. R. Kuntz. It was not merely " receiving compensation for the private injury occasioned by the commission of the crime," but an express agreement with a third party not to prosecute the criminal charge. If a court can be called upon to uphold this transaction, the criminal law may be used with impunity for the purpose of compelling the payment of debts, and the public interest be made wholly subservient to that of individuals.

" The object of all law is to repress vice and promote the general welfare of the State and society, and an individual shall not be assisted by the law in enforcing a demand originating in a breach or violation on his part of its principles or enactments. The benefit of the public, not the advantage of the defendant, is the principle upon which a contract is allowed to be impeached in respect of illegal consideration." Chitty on Contracts, pages 657 and 658.

"In general, if any part of the entire consideration for a promise, or any part of an entire promise be illegal, whether by statute or common law, the whole contract is void."

" If a part of the consideration is illegal the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal." Parsons on Contracts, Vol. 1, page 456 (sixth edition) ; Henderson v. Palmer, 71 Ill. 579, and Illinois cases there cited; Wolf v. Fletmeyer, 83 Ill. 418 ; Tobey v. Robinson, 99 Ill. 222.

We do not wish to be understood as holding that the verdict of the jury and judgment of the circuit court may not be affirmed on other ground, but regarding the transaction between the parties to this record, viewed in its most favorable light to appellant, as a flagrant violation of the law, we prefer to place our affirmance on that ground alone.

Affirmed.